UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET NO: 10-034 |
| v. | * | JUDGE DONALD E. WALTER |
| ASHTON R. O'DWYER, JR. | * | MAGISTRATE KAREN L. HAYES |

\* \* \*

## GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE "OTHER ACTS" EVIDENCE AND INCORPORATED MEMORANDUM

NOW INTO COURT, comes the United States of America, appearing herein through the undersigned Assistant United States Attorney, and hereby notifies the defendant of its intention to introduce evidence of other acts, in its case-in-chief, and avers as follows:

## I. PROCEDURAL HISTORY

On February 5, 2010, the defendant, Ashton R. O'Dwyer, Jr., was charged by way of an indictment with one count of making a threatening communication, in violation of 18 U.S.C. § 875(c). O'Dwyer was subsequently arraigned and pled not guilty to this charge on February 12, 2010. The trial is currently set for July 21, 2010.

## II.  LAW AND ARGUMENT

### A.    The Nature of the "Other Act" Evidence

The government's "other act" evidence will consist of emails and other communications the defendant made to numerous persons that were threatening in nature and evidence an escalating course of conduct by the defendant.  The defendant sent or made communications to several people including judges and employees of the Eastern District of Louisiana and employees of the Department of Justice.  These communications are documented in the Criminal Complaint (attached as Exhibit 1 and hereafter referred to as "Complaint") filed against the defendant in the Eastern District of Louisiana and also in other email messages (attached in globo as Exhibit 2 and hereafter referred to as "Messages").  The communications are related to litigation involving the defendant in several proceedings.

### B.    Legal Issues

Rule 402, Federal Rules of Evidence provides that all relevant evidence is admissible except otherwise provided.  Rule 404(b) of the Federal Rules of Evidence makes evidence of "crimes, wrongs, or acts" extrinsic to the indictment inadmissible to prove the character of the defendant, but allows extrinsic acts may be admissible to prove, among other things, motive, knowledge, opportunity, preparation, plan, or absence of mistake or accident. The evidence of the numerous communications made by the defendant is not being introduced to impugn the defendant's character which is the use prohibited by Rule 404(b).  The evidence of the communications is relevant to the charged offense and its probative value outweighs any possibility of unfair prejudice.

1.      **Intrinsic Act Evidence**

Acts that are part of the series of acts, including the offense charged, are never excluded by Rule 404(b) because they are not extrinsic to the offense charged.  United States v. Simpson, 709 F.2d 903, 907 (5th Cir. 1983); United States v. Torres, 685 F.2d 921, 925 (5th Cir. 1982). The evidence of the communications is relevant to how the charged offense came about, how it was structured, and its operating procedures.

In both cases, the government moved to introduce the evidence in its case-in-chief urging that it was intrinsic evidence of the charged conspiracy and in the alternative was 404(b) evidence.  In both cases, the court admitted the evidence.  In the present case, the communications occurred from August 30, 2007 up to the offense charged.  In the cases above, the evidence related to activities beginning several years before the charged offense.  Thus, admission of the evidence in the present case would be appropriate.

2.      **The Prior Acts Are Intrinsic to the Charged Crime**

Evidence of other acts occurring prior to the charged crime can be an intrinsic part of the government's proof and that evidence forms an integral and natural part of a witness's account of the circumstances surrounding the charged offense.

As the Fifth Circuit has recognized "[t]o determine whether 'other acts' evidence was erroneously admitted, first we must determine whether the evidence was intrinsic or extrinsic" to the crime charged.  United States v. Coleman, 78 F.3d 154, 156 (5th Cir.), cert. denied, 519 U.S. 891 (1996).

Evidence is intrinsic to the crime charged when "the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other

3

acts were 'necessary preliminaries' to the crime charged." United States v. Williams, 900 F.2d 823, 825 (5th Cir. 1990).

If so, the "evidence is admissible to complete the story of the crime by proving the immediate context of events in time and place." Coleman, 78 F.3d at 156 (citing United States v. Kloock, 652 F.2d 492, 494-95 (5th Cir.1981); see also, United States v. Royal, 972 F.2d 643, 647 (5th Cir.1992), cert. denied, 507 U.S. 911 (1993)).   Evidence of an uncharged offense arising out of the same transaction as the offense charged is intrinsic evidence.   United States v. Asibor, 109 F.3d 1023, 1034 (5th Cir.), cert. denied, 522 U.S. 1034 (1997).   Intrinsic evidence does not implicate Rule 404(b) so "'consideration of its admissibility pursuant to Rule 404(b) is unnecessary.'" Coleman, 78 F.3d at 156 (citing United States v. Garcia, 27 F.3d 1009, 1014 (5th Cir.), cert. denied, 513 U.S. 1009 (1994); see also Asibor, 109 F.3d at 1033-34)).

In the present case, the prior communications are part of an ongoing and escalating process by the defendant to threaten and intimidate numerous persons associated with litigation involving the defendant.   The communications continued for several years and contained common words and phrases which were threatening in nature.   For example, O'Dwyer, in his messages to several people, unnecessarily makes use of the phrase that he was neither "homicidal or suicidal."   Messages 3530, 7179, 5752.  This phrase is meant to convey a message to the recipient regarding the defendant's thoughts as to homicide and suicide.   The phrase is an example of the defendant's intent when he sent later the later email for which he is charged.   The defendant raised the question of how his creditors would benefit from his suicide but continues on by asking "but suppose I become 'homicidal'?  Given the recent security breach at 500 Poydras Street, a number of scoundrels might be at risk if I DO become homicidal."  This message was sent on January 29, 2010 at 12:22 p.m.

4

Message 8708.  O'Dwyer then sent a follow-up message at 5:37 p.m. telling the clerk for Judge

Brown of the United States Bankruptcy Court that Judge Brown should be told that "[y]ou also can

tell him for me that, if he wants, I can add his name to the 'hit list' which I have already furnished

to the United States Department of Justice, the FBI and the Fifth Circuit."  Message 8714.

O'Dwyer sent numerous emails to Robin Doyle Smith, a Justice Department lawyer involved

in civil litigation with the defendant.  In several vulgar and profanity laced emails, he continuously

threatened Smith if Smith did not take legal action demanded by O'Dwyer.  "[I]'m letting you and

the Department of 'Injustice' know that you are both in the cross-hairs (sic).  Have a nice weekend."

Message 5629.  O'Dwyer continued the threats by writing that if Smith did not file a notice of appeal

demanded by O'Dwyer in litigation, O'Dwyer intended to sue Smith and the government.  "[T]hen

I plan to sue the piss out of you and the 'Jew-Nighted' States of Amerika (sic) (the OBAMA Nation)

for a number of abrogations of legal duties and deprivation(s) of Constitutional rights".  Message

5678.

O'Dwyer's communications show that he engaged in an escalating pattern of how he

addressed those who he believed had wronged him in his litigation.  Several of his communications

were directed at Judges of the Eastern District of Louisiana such as Judges Duval and Lemelle.  He

continuously referred to them in a pattern of threats, racial epithets and insults that grew more

vitriolic in nature commensurate with rulings adverse to O'Dwyer himself.  Messages 6695, 6774;

Complaint, p. 4.  These messages show a disdain and increasing anger for the Judges and the court

system itself.  O'Dwyer didn't care if he was disbarred or for any other repercussions resulting from

his actions.  Message 5679.  He continued to use phrases that were threatening in nature but, in

lawyerly-like fashion, did not directly threaten the recipients of the communications or others

referenced in the bodies of the communications.  He would continue to use phrases that were gun-related such as "They think they are 'bullet-proof'."  Message 6703.  The intent of the message was nonetheless conveyed by O'Dwyer's carefully chosen words.  He goes on to add, in another message to Robin Doyle Smith on January 15, 2010,  "For you all to force me to keep quiet about what I think, you are all going to have to kill me."  Message 18497.

O'Dwyer used other threatening phrases such as he "will exact retribution from both of you in the flesh.  This is not a threat it's a promised [sic]."  Fax to Harry C. Cabral, August 30, 2007, Complaint, p. 1.  Cabral represented O'Dwyer's wife in their divorce proceedings and he was stating what he would do to Cabral if he mismanaged a cash portfolio.  On April 11, 2009, O'Dwyer encountered Judge Martin L.C. Feldman, of the Eastern District of Louisiana, at a local business. Judge Feldman was not a presiding judge in any of O'Dwyer's litigation, but O'Dwyer still berated Judge Feldman and ultimately told him to "tell the F.B.I. about me and tell them to bring guns." Complaint, p. 4.

These messages are intrinsic to the count charged because they show a pattern of O'Dwyer's intent to threaten those he believed were adverse to him and the actions he intended to take against them, both personally and legally, just as he did in the charged count of the Indictment.   The above communications were made as a result of a blame that O'Dwyer attached to those in the judicial system who played a role in adverse legal rulings against the defendant.  O'Dwyer would even threaten those merely associated with the Eastern District of Louisiana but did not play a direct role in the litigation involving O'Dwyer.

Direct evidence that O'Dwyer was making threatening communications before the date of the charged offense is "inextricably intertwined" with the crime charged.  See United States v. Dula,

989 F.2d 772, 777 <u>cert. denied</u>, 510 U.S. 859 (1993)(finding that testimony was intrinsic evidence which did not fall within the meaning of 404(b) because in developing proof of intent and motive, the prosecution may offer all of the surrounding circumstances that were relevant).  Here, the prior communications are connected with the charged offense and must be used to show a general pattern, a necessary criminal intent, and O'Dwyer's guilty knowledge.

### 3.      If the Evidence Is Not Intrinsic, It is Still Admissible as Extrinsic Evidence Under Rule 404(b) of the Federal Rules of Evidence

Rule 404(b) of the Federal Rules of Evidence allows the admission of "other crimes, wrongs, or acts" to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," but not to prove the "character of a person in order to show that he acted in conformity herewith."

Rule 404(b) is a rule of inclusion.  <u>United States v. Shaw</u>, 701 F.2d 367, 386 (5th Cir. 1983). In <u>United States v. Beechum</u>, 582 F.2d 898, 911 (5th Cir. 1978), the Fifth Circuit, sitting en banc, established a two-part test for the admissibility of extrinsic evidence: (1) Is the evidence relevant to an issue other than the defendant's character? (2) And does the evidence possess sufficient probative value that is not substantially outweighed by its undue prejudice?  The relevancy of extrinsic evidence is "a function of its similarity to the offense charged."  <u>Id</u>.

### a.      Relevancy of the Extrinsic Evidence

Evidence that O'Dwyer made similar communications is relevant to prove intent, knowledge and absence of a mistake.  The Fifth Circuit explained in <u>United States v. Beechum</u>, 582 F.2d 898, 911 (5th Cir. 1978)(en banc) that the relevancy of an extrinsic offense admitted to show intent "derives from the defendant's indulging himself in the same state of mind in the perpetration of both

the extrinsic and the charged offenses."   Such evidence "lessens the likelihood that the defendant committed the charged offense with innocent intent."  Id. at 913.

The relevancy of extrinsic evidence is measured by its similarity to the offense charged. United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978)(en banc).   Not only does the similarity of the acts provide "a logical nexus between the extrinsic act and the charged act," similarity also guards against the impermissible admission of evidence solely to condemn the defendant's character. United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997).  Similarity "provides a cognizable divide between the kinds of evidence that are introduced to show a particular intent and those that are introduced only to show a much more generalized intent (and therefore propensity to commit crime in general)."  Id.

In United States v. Roberts, 619 F.2d 379 (5th Cir. 1980), the Fifth Circuit held that "[e]vidence of such extrinsic offenses as may be probative of a defendant's state of mind is admissible unless he 'affirmatively take(s) the issue of intent out of the case.'"  619 F.2d at 383 (citation omitted); see also United States v. Webb, 625 F.2d 709, 710 (5th Cir. 1980) ("where, as here, 'intent is not normally inferable from the nature of the act charged' . . . and the defendant fails to give enforceable pretrial assurances that he intends not  to dispute criminal intent, the Government's case-in-chief may include such extrinsic evidence as would be admissible if intent were actively contested").[1]

---

[1]Beechum, 582 F.2d at n.19, makes clear, however, that Rule 404(b) and its advisory notes allow admission of extrinsic evidence of intent or knowledge even when the defendant does not put them at issue.  The government may put on admissible 404(b) evidence in its case-in-chief to help prove intent, knowledge and the absence of mistake.

The government does not seek to offer general evidence of O'Dwyer's bad character. The government seeks to introduce extrinsic evidence only to show that O'Dwyer is perfectly capable of knowingly and intentionally making a threatening communication. The evidence is offered to rebut his expected defense that he sent an email but it was not meant to be threatening in nature.  By presenting such a defense, O'Dwyer will put his own intent, knowledge, and the absence of mistake at issue.

       **b.**       **Evidence of the Other Communications is Not Unduly Prejudicial**

O'Dwyer's prior communications are relevant under Rules 401 and 404(b) of the Federal Rules of Evidence.  The only remaining question is whether the prejudicial effect of the extrinsic evidence would "substantially outweigh" its probative value under Rule 403.  United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978)(en banc)(reversing an earlier, tougher standard).

The relevant legal question is not whether the evidence would be prejudicial, because any probative evidence would have a prejudicial effect by making conviction more likely.  See United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997)(admitting extrinsic evidence that was "only prejudicial because it was so highly probative").  "Congress was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such evidence." Huddleston v. United States, 485 U.S. 681, 688-89 (1988).   Instead, the Fifth Circuit measures whether the prejudicial effect would "substantially outweigh" the probative value.  Beechum, supra.  The Fifth Circuit measures prejudice by whether the extrinsic offense is "of a heinous nature," and would "incite the jury to irrational decision by its force on human emotion."  Beechum, 582 F.2d at 917.

9

O'Dwyer's acts are not prejudicial as measured by <u>Beechum</u>, <u>supra</u>.  The extrinsic evidence offered simply does not meet the legal definition of prejudicial evidence.

### III.  CONCLUSION

The prior communications are admissible as intrinsic to the act charged.  Alternatively, they are admissible under Rule 404(b) of the Federal Rules of Evidence.

Respectfully submitted,

JIM LETTEN
UNITED STATES ATTORNEY


s/Gregory M. Kennedy
GREGORY M. KENNEDY
Assistant United States Attorney
Louisiana Bar Roll No. 20896
Hale Boggs Federal Building
500 Poydras Street, Second Floor
New Orleans, Louisiana  70130
Telephone:  (504) 680-3102
Greg.Kennedy@usdoj.gov

### CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2010, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to Cynthia Cimino and Virginia L. Schlueter, court-appointed stand-by counsel for defendant Ashton R. O'Dwyer, Jr. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participant: **Ashton R. O'Dwyer, Jr.**


s/Gregory M. Kennedy
GREGORY M. KENNEDY
Assistant United States Attorney