UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET NO: 10-034 |
| v. | * | JUDGE DONALD E. WALTER |
| ASHTON R. O'DWYER, JR. | * | MAGISTRATE KAREN L. HAYES |
| | * * * | |

**GOVERNMENT'S OPPOSITION AND INCORPORATED
MEMORANDUM TO DEFENDANT'S MOTIONS 6 AND 8**

NOW INTO COURT, comes the United States of America, appearing herein through the undersigned Assistant United States Attorney, and respectfully submits this opposition to defendant Ashton R. O'Dwyer's Motions 6 and 8 - to Dismiss the Indictment, and avers as follows:

**Motion No. 6 regarding dismissal of the indictment**

The defendant argues that the contents of his e-mail did not contain a "true threat" or language that constituted "a threat to injure the person of another," but rather contained hyperbole "of the type which was routinely employed by defendant, post-KATRINA, . ."[1]

In his legal argument, defendant refers to Watts v. United States, 394 U.S. 705 (1969), in which the Supreme Court held that the petitioner's statement did not constitute a threat on the

---

[1] Defendant's reference to "hyperbole routinely used by defendant post-Katrina" puts the defendant's intent and motive squarely at issue, as well as the context under which the threat was received.

President's life, but was merely political hyperbole. In that case, the petitioner, who was attending an anti-war rally on the Washington Monument grounds in Washington, D.C., stated that "[i]f they ever make me carry a rifle the first man I want to get in my sights is L.B.J." Id. at 706. The Court held that, taken in context and regarding the "expressly conditional nature of the statement and the reaction of the listeners," the statement was not a true threat, but political hyperbole. Id. at 707.

Defendant argues that this case stands for the proposition that hyperbole does not constitute a true threat and is protected as free speech under the First Amendment to the United States Constitution. However, the Court clearly stated that "[t]aken in context, and regarding the expressly conditional nature of the statement and the reaction of the listeners," the statement was not a true threat. Id. The nature of a given statement, therefore, depends on the context in which it is uttered as well as the reasonable perception of those who hear the statement. Perhaps, had Watts' statement been made in a small room with a handful of others surrounded by firearms and a layout of the White House, given the context and the reasonable belief of those present that Watts was serious, the Supreme Court would have ruled the exact same statement a true threat and not mere hyperbole.

The Fifth Circuit further differentiated Watts in United States v. Daughenbaugh, 49 F.3d 171 (5th Cir. 1995). In Daughenbaugh, the defendant sent threatening letters to three Texas state court judges and a United States bankruptcy judge, stating, inter alia, that "all races other than the Aryan race will be deported or executed, all white judges will be checked out and will be asked to leave the country or be executed. This is your last warning to change your ways or die! The Aryan warrior has spoken." Id. at 173. The defendant argued that the letters were protected as political hyperbole under Watts v. United States. Id. at 174. The Fifth Circuit disagreed, noting that Watts involved a public rally, whereas this case involved a private letter. Id.

2

As in Daughenbaugh, the defendant in the instant case made his threat through a private correspondence (e-mail). Given the context and nature of the communication, the defendant's e-mail is more similar to the defendant's letters in Daughenbaugh than the defendant's statement in Watts.

Defendant also brings up the Fifth Circuit cases, United States v. Bozeman, 495 F.2d 508 (5th Cir. 1974), United States v. Myers, 104 F.3d 76 (5th Cir. 1997), and United States v. Morales, 272 F.3d 284 (5th Cir. 2001). In Bozeman, the Fifth Circuit held that the statement in question met the test of what amounts to a threat under 18 U.S.C. § 875(c), "i.e., '(this) communication 'in its context' would 'have a reasonable tendency to create an apprehension that its originator will act according to its tenor'." Bozeman, 495 F.2d at 510 (citing United States v. Holder, 302 F. Supp. 296, 301 (D.Montana 1969) aff'd 427 F.2d 715 (9th Cir. 1970)). Defendant argues that this "Bozeman rule" is erroneous due to its lack of clarity. However, as defendant points out himself, the Fifth Circuit has continued to apply the "Bozeman" rule in determining whether any given statement is a threat or not. See, Myers, supra at 79 (holding that "[i]n this circuit, a communication is a threat under §875(c) if "in its context [it] would have a reasonable tendency to create apprehension that its originator will act according to its tenor." (citing Bozeman, 495 F.2d at 510)); Morales, supra at 287.

Defendant, although arguing that both Myers and Morales have erroneously extended the "Bozeman rule," claims that both cases show that his communication falls short of a true threat, literally comparing the language of his e-mail with that of the communications in each respective case. This test of what amounts to a true threat flies in the face of both Watts and Bozeman, rejecting any notion of "context" or the perception of the recipient. While the threat in Myers was indeed more explicit, the context in which it was made is strikingly similar to the context in which the defendant made his threat. The Myers threat followed a series of communications between

3

Myers and a government staffer in which Myers became increasingly dissatisfied with the government and his communications becoming ever more menacing. Similarly, in the instant case, the defendant made a number of communications to various federal employees and court staffers in an escalating manner that led to the communication in question. Taken in context, and through the subjective eyes of the recipient, the defendant's communication is just as much a true threat as the threats made in Bozeman, Myers, and Morales.

Furthermore, under United States v. Turner, 960 F.2d 461, 465 (5th Cir. 1992), whether or not the language contained in a statement or communication constitutes a "threat" is an issue of fact for the jury. In this case, defendant's statement citing the possibility of his becoming homicidal at 500 Poydras Street, given the escalating nature of the communications between the defendant and various government employees, constitutes a true threat. A jury will likely conclude that the recipient of such a communication would fear that the author would act in accordance with the intentions stated in the communication.

**Motion No. 8 regarding dismissal of the indictment**

Defendant argues that his communication was not a true threat, but rather hyperbole and, therefore, free speech under Watts v. United States, 394 U.S. 705 (1969). As noted above, the differences between defendant's communication and the statement in Watts are striking. The Watts Court held that, considering the context in which the statement was made and the reaction of those who perceived the statement, it amounted to nothing more than political hyperbole. Id. Watts involved a statement that, if given a rifle, Watts wanted to have the President of the United States in his sights first. Id. This statement was made at a political anti-war rally among anti-war protestors at the foot of the Washington Monument. Id.

In stark contrast, the defendant's statements were made through a private e-mail following an escalating pattern of abusive communications to federal employees and involved no statements of political import. As noted in United States v. Daughenbaugh, 49 F.3d 171, 174 (5th Cir. 1995), Watts is inapposite because the statement was uttered at a public rally, whereas the defendant's communication was through a private correspondence. Therefore, the defendant's statement, unlike Watts' statement, is a true threat and is not protected by the First Amendment.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that defendant's motions 6 and 8 be DENIED.

Respectfully submitted,

JIM LETTEN
UNITED STATES ATTORNEY

s/Gregory M. Kennedy
GREGORY M. KENNEDY
Assistant United States Attorney
Louisiana Bar Roll No. 20896
500 Poydras Street, Second Floor
New Orleans, Louisiana  70130
Telephone:  (504) 680-3102
Greg.Kennedy@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2010, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to Cynthia Cimino and Virginia L. Schlueter, court-appointed stand-by counsel for defendant Ashton R. O'Dwyer, Jr.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participant**: Ashton R. O'Dwyer, Jr.**

     s/Gregory M. Kennedy
GREGORY M. KENNEDY
Assistant United States Attorney